## Todd, Appellant, *v.* Skelly.

424

Argued January 5, 1956. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Samuel D. Goodis,* with him *William A. Kelley, Jr.* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellant.

*Harold W. Spencer,* with him *Franklin L. Wright* and *Wright, Mauck, Hawes & Spencer,* for appellee.

Opinion by Mr. Justice Bell, March 13, 1956:

Plaintiff brought an action of trespass in which he claimed a judgment against defendants in the amount of $278,322. Preliminary objections in the nature of a demurrer filed by the defendant bank were sustained. Plaintiff's amended complaint in trespass averred the following facts:

Plaintiff is a builder and real estate developer. Defendant Skelly is in the real estate business and is and was at the times in question a director of the bank. Plaintiff submitted an offer of purchase to the owners of a 19 acre tract of undeveloped ground known as the Simon Tract, on the condition that he was able to obtain a change in zoning from A to B Classification. On January 8, 1948, the owners advised plaintiff by letter that they would sell him the ground for $35,000. cash:

Plaintiff on January 9, 1948, thereupon discussed with Barrett, who was secretary and a director of defendant bank, his plan to purchase this tract and subsequently sell it for a super market if the zoning could be changed; and at the same interview he made an oral application for a mortgage loan of $27,000. upon the security of the Simon tract of land. On January 14, 1948, plaintiff signed a printed form of application for a loan of $27,000. to be secured by a first mortgage on plaintiff's home and the Simon Tract, upon Barrett's assurance that it would be acted upon in three or four days. Plaintiff paid Barrett $15. [the usual charge] to cover the cost of an appraisal of the real estate, which was to be made by the bank's appraisers. On January 19, 1948, Mr. Steel, Mr. March and defendant Skelly, all of whom were directors of defendant bank, informed plaintiff they had been designated by the bank to appraise the real estate offered by plaintiff as security for the proposed mortgage loan. On January 28th, plaintiff received a letter from defendant bank, dated January 27, 1948, the pertinent part of which is as follows: ". . . our Executive Committee felt they would not be justified in recommending this loan for approval for the investment of trust funds due to the conditions surrounding it, with which, of course, you are familiar. This entire programme depends on wheth-

er or not you will be able to have the zoning ordinance changed, permitting the erecting of a super market on a part of the vacant tract; the actual purchase of the property depends on this zoning ordinance being changed to permit this. Presuming you would have the ordinance changed, possibly your prospective purchasers would not go through with the purchase, in which case we would have rather a large mortgage, *secured to a great degree by vacant ground*.[1] I am sorry, Walter, we felt obliged to take this stand but want you to know it was given every consideration, as our Real Estate Committee, as noted above, had several meetings in connection with it. We thank you for placing the application with us. Yours very truly, /s/ B. B. Barrett    Secretary."

Thereafter, (no date being stated), plaintiff's sister offered to advance to him $25,000. on the security of a mortgage on the Simon tract. On *February 9, 1948*, plaintiff informed counsel for the owners that he desired to accept the offer set forth in the owner's aforesaid letter to him dated January 8th. Counsel for the owners then informed plaintiff he could not accept the offer because Skelly had submitted an offer of $40,000. for the Simon Tract, which offer had been accepted.[2] "Pursuant to [Skelly's] offer, the heirs of Catherine Simon conveyed to David E. Freedman and Reba S. Freedman, his wife, by deed dated March 19, 1948, an undivided 5 5/72 interest in the Simon tract for a consideration of $30,555.55. . . ."

Skelly, in the course of his duties as a director of and appraiser for defendant bank, had obtained knowl-

---

[1] Italics, ours.

[2] Notwithstanding this information, plaintiff did not file his complaint against Skelly or the bank until five and a half years later, viz., October 1, 1953.

edge of plaintiff's plan to change the zoning and attempt to sell the site for the erection of a super market. Plaintiff further averred that on or before January 12, 1948, *defendant Skelly*—with the knowledge and acquiescence of defendant bank, through its secretary and director, Barrett, and its directors and appraisers, March and Steel—used the confidential information as to plaintiff's plan, to become the secret competitor of plaintiff for the purchase of the property "to the private profit of defendant Skelly". Plaintiff further averred that defendant bank had wrongfully appointed defendant Skelly to act as its agent in making an appraisal of the property and that Barrett and March, directors, knew of Skelly's adverse interest. Plaintiff then avers that the fair market value of the Simon Tract, which he could have bought for $35,000. cash, is, exclusive of all buildings and improvements, not less than $399,350.[3]

Several facts stand out like the Himalaya Mountains to bar plaintiff's claim. Skelly was acting as an appraiser (together with two other appraisers) for the bank for the sole purpose of appraising the market value of the property upon which plaintiff desired to make a mortgage loan in the amount of $27,000. In negotiating for the purchase of the property by the Freedmans, Skelly was acting solely for himself and was not acting within the scope of his employment or within the actual or apparent scope of his authority. Moreover, defendant bank did not in the remotest degree benefit or profit from Skelly's negotiating for another the purchase of the Simon Tract and had no interest in or connection therewith, or with the financing thereof, if it was financed.

---

[3] No explanation was given for this alleged astronomical rise in the value of this property.

Defendant bank had an absolute right to refuse plaintiff's application for a mortgage loan without giving any reason for its refusal. However, we note that in its letter of January 27, 1948, it gave a sound reason for refusing the loan, and there is no averment with supporting facts that refusal of the loan caused plaintiff to lose the purchase. Furthermore, plaintiff does not aver *any facts* which show that the bank acted unlawfully, or if it did, that he was injured by the bank's unlawful action.

Preliminary objections or pleadings in the nature thereof admit as true all facts which are well and clearly pleaded, but not the pleader's conclusions therefrom or averments of law: *Gardner v. Allegheny County*, 382 Pa. 88, 94, 114 A. 2d 491; *Narehood v. Pearson*, 374 Pa. 299, 302, 96 A. 2d 895. Preliminary objections should be sustained only in cases which are clear and free from doubt: *Gardner v. Allegheny County*, 382 Pa., supra; *London v. Kingsley*, 368 Pa. 109, 81 A. 2d 870; *Waldman v. Shoemaker*, 367 Pa. 587, 80 A. 2d 776.

A bank, like any other corporation or principal, is liable for the acts of its agents, officers or directors only when the agent, officer or director is acting within the express or implied or apparent scope of his authority or employment, or where the principal, with full knowledge of the material facts, ratifies the unauthorized acts: *E. Girard Sav. & Loan Assn. v. Houlihan*, 373 Pa. 578, 97 A. 2d 23; *Fishman v. Davidson*, 369 Pa. 39, 85 A. 2d 34 (1951); *Schwartz v. Mahoning Val. Country Club*, 382 Pa. 138, 114 A. 2d 78 (1955); *Currie v. Land Title Bk. & Tr. Co.*, 333 Pa. 310, 5 A. 2d 168 (1939); *Kelly, Murray, Inc. v. L. B. & T. Co.*, 299 Pa. 236, 149 A. 190 (1930); 2 American Jurisprudence, §350.

The rule of agency is thus correctly set forth in 2 American Jurisprudence, supra: ". . . the principal is

not bound by, or liable for, the act or contract of his agent which is beyond the actual, and not within the apparent, scope of the agent's authority or employment, unless that act is ratified by the principal with full knowledge of all material facts. . . ."

Where an agent acts in his own interest which is antagonistic to that of his principal, or commits a fraud for his own benefit in a matter which is beyond the scope of his actual or apparent authority or employment, the principal who has received no benefit therefrom will not be liable for the agent's tortious act.[4] Cf. *Potter Title & Trust Co., Admr. v. Knox,* 381 Pa. 202, 113 A. 2d 549; *Howard v. Zaney Bar,* 369 Pa. 155, 85 A. 2d 401; *Littler v. Dunbar,* 365 Pa., supra; *Peterson v. Marianna Borough,* 310 Pa. 524, 165 A. 838; 10 Fletcher, Corporations, §4877, page 345.

In 10 Fletcher, Corporations, §4877, supra, the law is thus stated: "As a general rule however a corporation is no more liable than a natural person would be for torts not within the scope of the authority of its officers and agents or servants, and committed by them outside of the course of their employment, unless it has expressly authorized or has ratified the same; and it makes no difference whether the officer, agent or servant undertakes to act for the corporation in a matter which is beyond his authority, or acts for himself."

Whatever rights, if any, plaintiff had in connection

---

[4] Furthermore, a principal will not be presumed to have had knowledge or information of the agent's fraudulent acts: *Littler v. Dunbar,* 365 Pa. 277, 74 A. 2d 650 (1950); *Thees et ux. v. Prudential Ins. Co. of America,* 325 Pa. 465, 468, 190 A. 895; *Byrne v. Dennis,* 303 Pa. 72, 76, 77, 154 A. 123 (1931); *First National Bank of Bangor v. Bangor Trust Co.,* 297 Pa. 115, 146 A. 595 (1929); *Gunster, Assignee of Scranton City Bank v. The Scranton Illuminating, Heat & Power Co.,* 181 Pa. 327, 37 A. 550 (1897); *Dominion Trust Co. v. Hildner,* 243 Pa. 253, 90 A. 69 (1914).

430

with this property are against Skelly—he certainly had no legal right of action against the bank.

In the light of the foregoing facts and authorities, the lower Court correctly sustained the bank's preliminary objections to the amended Statement of Claim.

Judgment affirmed.