PNC BANK, KENTUCKY, INC., successor by name change to Citizens Fidelity Bank and Trust Company, Plaintiff,

and

Palm Beach Federal Savings Bank, The Allegheny County Residential Finance Authority, First National Bank of Keystone, W. Va., Pennsylvania State Housing Finance Agency, Pennsylvania State Employes' Retirement Board, Pennsylvania Public School Employes' Retirement Board, Resolution Trust Corporation, Receiver of Aspen Federal Bank, and Federal National Mortgage Association, Intervenor–Plaintiffs,

v.

HOUSING MORTGAGE CORPORATION, Ioannis Avradinis, a/k/a John Avradinis, Haralambos Avradinis, a/k/a Harry Avradinis, Amarjit Singh Bhalla, a/k/a Armjit Singh Bhalla, Harjit Singh Bhalla, John R. Hancock, Edward A. Rendulic, Kenneth Hanna, Peter Kakoyiannis, and Edwards & Angell, a law firm, Defendants.

PENNSYLVANIA HOUSING FINANCE AGENCY, Allegheny County Residential Finance Authority, Pennsylvania State Employes' Retirement Board, Pennsylvania Public School Employes' Retirement Board, and First National Bank of Keystone, West Virginia, Plaintiffs,

v.

OLYMPIAN BANK and Grant Thornton, Defendants.

Civ. A. No. 92–2215.

United States District Court, W.D. Pennsylvania.

April 15, 1994.

H. Woodruff Turner, Thomas R. Johnson, David F. McGonigle, Kirkpatrick & Lockhart, Pittsburgh, PA, for PNC Bank, Kentucky, Inc.

David M. Neuhart, Pittsburgh, PA, George E. McGrann, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Palm Beach Federal Savings Bank.

W. Timothy Barry, Barry, Fasulo & Hough, Pittsburgh, PA, for The First National Bank of Keystone.

Ira Weiss, Allegheny County Law Department, Pittsburgh, PA, Howard M. Louik, Goldberg, Persky, Jennings & White, Pittsburgh, PA, for The Allegheny County Residential Finance Authority.

Charles B. Gibbons, Michael Yablonski, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Calvin R. Koons, Office of Attorney General, Harrisburg, PA, Rebecca L. Peace, Pennsylvania Housing Finance Agency, Harrisburg, PA, for Pennsylvania State Housing Finance Agency.

Charles B. Gibbons, Michael Yablonski, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Calvin R. Koons, Office of Attorney General, Harrisburg, PA, Ira B. Silverstein, Fox, Rothchild, O'Brien & Frankel, Philadelphia, PA, Michael D. Siegel, McCarter & English, Newark, NJ, Charles K. Serine, Bruce A. Feldman, Commonwealth of Pennsylvania, Harrisburg, PA, for Pennsylvania State Employes' Retirement Board.

Charles B. Gibbons, Michael Yablonski, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Calvin R. Koons, Office of Attorney General, Harrisburg, PA, Charles K. Serine, Bruce A. Feldman, Commonwealth of Pennsylvania, Harrisburg, PA, for Pennsylvania Public School Employes' Retirement Board.

Mary P. Portis, Portis & Associates, Pittsburgh, PA, Richard A. Francis, Denver, CO, for Resolution Trust.

Ralph A. Finizio, Thomas J. Miller, Houston Harbaugh, Pittsburgh, PA, for Federal National Mortgage Association.

Dennis A. Watson, John R. McGinley, Leo Gerard Daly, Grogan, Graffam, McGinley & Lucchino, Pittsburgh, PA, for Housing Mortgage Corporation.

Paul H. Titus, Titus & McConomy, Pittsburgh, PA, for Ioannis Avradinis, Haralambos Avradinis.

Eugene R. Scheiman, Baer, Marks & Upham, New York City, for Amarjit Singh Bhalla.

Harjit Singh Bhalla, Old Brookville, NY, pro se.

Amy Reynolds Hay, United States Attorney's Office, Pittsburgh, PA, J. Christopher Kohn, Robert Hollis, Jack Kaufman, U.S. Department of Justice, Civil Division, Washington, DC, James S. Fagerberg, U.S. Department of Housing & Urban Development, Government National Mortgage Association, Washington, DC, for Government National Mortgage Association.

John R. Hancock, McCandless Twp, PA, pro se.

Edward A. Rendulic, Bridgeville, PA, pro se.

Kenneth Hanna, Pittsburgh, PA, pro se.

Stanley W. Greenfield, Greenfield & Associates, Pittsburgh, PA, Charles A. Stillman, John B. Harris, New York City, for Peter Kakoyiannis.

Stanley W. Greenfield, Greenfield & Associates, Pittsburgh, PA, for Edwards & Angell.

Richard R. Nelson, II, Wayne C. Holcombe, Cohen & Grigsby, Pittsburgh, PA, for Grant Thornton.

Francis C. Rapp, Jr., Feldstein, Grinberg, Stein & McKee, Pittsburgh, PA, for Olympian Bank.

Frederick N. Egler, Jr., Egler, Garrett & Egler, Pittsburgh, PA, Gilbert J. Schroeder, Cole Stephen Kain, Randall I. Marmor, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, for Reliance Insurance Company.

David M. Neuhart, Pittsburgh, PA, George E. McGrann, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Palm Beach Federal Savings Bank.

## MEMORANDUM ORDER

COHILL, District Judge.

On November 9, 1992, this case was referred to United States Magistrate Judge Kenneth J. Benson for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(A) and (B), and Rules 3 and 4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on March 8, 1994, recommended that defendant Grant Thornton's motion to dismiss pursuant to Rule 12(b)(6) (Docket # 410) be granted with respect to

the complaint filed by HMC, and granted with respect to the intervenor-plaintiffs' claims for professional malpractice and negligent misrepresentation, but denied with respect to the intervenor-plaintiffs' claim sounding in contract. The parties were allowed ten (10) days from the date of service to file objections. Service was made on all counsel by first-class mail on March 8, 1994. Objections and brief in support of objections were filed by Grant Thornton on March 17, 1994 (Docket # 564) and objections and brief in support of objections were filed by Housing Mortgage Corporation on March 21, 1994 (Docket # 565). On March 28, 1994, intervenor-plaintiffs filed a response to defendant Grant Thornton's objections (Docket # 578) and defendant Grant Thornton filed a response to Housing Mortgage Corporation's objections (Docket # 579). After *de novo* review of the pleadings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 15th day of April, 1994;

IT IS HEREBY ORDERED that Grant Thornton's motion to dismiss pursuant to Rule 12(b)(6) (Docket # 410) is granted with respect to HMC's complaint; granted with respect to the intervenor-plaintiffs' claims for professional malpractice and negligent misrepresentation; and denied with respect to the intervenor-plaintiffs' contract claim.

The report and recommendation of United States Magistrate Judge Kenneth J. Benson, dated March 8, 1994 (Docket # 547), is adopted as the opinion of the court.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BENSON, United States Magistrate Judge.

### I. RECOMMENDATION

It is respectfully recommended that defendant Grant Thornton's motion to dismiss pursuant to Rule 12(b)(6) (Docket # 410) be granted with respect to the complaint filed by HMC, and granted with respect to the intervenor-plaintiffs' claims for professional malpractice and negligent misrepresentation, but denied with respect to the intervenor-plaintiffs' claim sounding in contract.

### II. REPORT

This court has already described this case as a "complex multi-party lawsuit containing manifold claims and counterclaims between and among the parties, arising out of the alleged mismanagement of defendant Housing Mortgage Corporation by its former principals and former operating officers. The allegations of mismanagement are in the nature of claims of intentional conduct, *viz.*, theft, conversion, forgery, fraud." (Docket # 406). The case has acquired an added dimension with the filing complaints by HMC and the intervenor-plaintiffs [1] on September 30, 1993, adding a new party to the lawsuit, Grant Thornton. Defendant Grant Thornton is an accounting firm which, for the years 1989–1991, was hired by HMC to audit HMC's financial statements. HMC and the intervenor-plaintiffs allege that Grant Thornton failed to perform its duties in conformity with professional standards. The claims asserted are framed as professional negligence and breach of contract. Grant Thornton has responded to its inclusion in this litigation vigorously, and has filed a motion to dismiss pursuant to Rule 12(b)(6) (Docket # 410), a motion to dismiss pursuant to Rule 12(b)(1) (Docket # 412), a motion to drop it as a party for misjoinder under Rule 21, or for severance (Docket # 414), and a motion to vacate earlier orders of this court authorizing the receiver to liquidate HMC's assets, and seeking to have this court terminate the appointment of the receiver (Docket # 416). Presently before the court is Grant Thornton's Rule 12(b)(6) motion. The other motions will be dealt with in separate reports.

### LEGAL STANDARDS

"In reviewing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn

---

1. The Pennsylvania Housing Finance Authority, the Allegheny County Residential Finance Authority, the Pennsylvania State Employees' Retirement Board, the Pennsylvania Public School Employees' Retirement Board, and the First National Bank of Keystone, West Virginia.

therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Stobaugh v. Wallace,* 757 F.Supp. 653, 656 (W.D.Pa.1990), *citing Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). A motion to dismiss pursuant to Rule 12(b)(6) cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will prevail at the end, but whether he should be entitled to offer evidence to support his claim. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## RELIANCE UPON THE AUDIT REPORTS

■ The complaint filed by HMC contains allegations that Grant Thornton was negligent in preparing audits for HMC for the years 1989, 1990 and 1991. Grant Thornton asserts that HMC, through the allegations in its complaint, and through admissions on file, has conceded that its principals and officers were involved in a massive scheme of fraud during this time period, and that HMC, through these actors, knew that the audit reports were not accurate, and hence did not rely upon them. In other words, the knowledge that the audit report was unreliable due to the fraud ought to be imputed to HMC. Grant Thornton asserts, therefore, that HMC has not pleaded facts which would support a finding of proximate causation with respect to any of HMC's injuries, since no reliance upon the audit reports can be shown as a matter of law.

Grant Thornton relies upon *FDIC v. Ernst & Young,* 967 F.2d 166, 170 (5th Cir.1992), where the FDIC, as assignee of failed investment corporation, sued the failed corporation's accountant for professional negligence. The sole owner of the corporation, however, had engaged in fraud. The court imputed the knowledge of the sole owner of the corporation to the corporation itself, and determined that, based upon this knowledge of fraud, the corporation had never relied upon the accuracy of the audit reports, and that

the FDIC could not establish proximate causation. In making this determination, the court noted that proximate causation was an element of professional negligence under Texas law, and required a finding that the "act or omission was a substantial factor in bringing about the injury and without which no injury would have occurred." *Id.,* at 170. Hence, if no one relied upon the audit, then it could not have been a substantial factor in bringing about the harm. *Id.* Pennsylvania also requires a showing that the alleged negligence of an accountant was a "substantial factor" in bringing about the harm caused. *See, Robert Wooler Co. v. Fidelity Bank,* 330 Pa.Super. 523, 479 A.2d 1027, 1033 (1984) (an accountant who breaches its duty to exercise the care and skill customarily exercised by an accountant may be made to respond in damages if its negligence was a substantial factor in bringing about the harm). Thus, if Grant Thornton can establish, based upon the pleadings and admissions on file, that HMC did not rely upon the audits in conducting its affairs, then it will be entitled to dismissal of HMC's claims for negligence.

This court has already ruled that HMC has admitted by default all of the requests for admission served by PNC Bank Kentucky. Grant Thornton asserts that these admissions, along with the facts pleaded by HMC, establish conclusively that HMC's owners and top management were all involved in a scheme to defraud HMC's creditors, and that, therefore, no one at HMC relied upon Grant Thornton's audit reports. HMC has both pleaded and admitted that its two former owners, Ioannis Avradinis and Amarjit Singh Bhalla, were intimately involved in a massive scheme of fraud which resulted in the diversion of funds from escrow accounts held by HMC, and in the misuse of millions of dollars of loan monies extended to HMC by creditors. HMC has also pleaded and admitted the intimate involvement of HMC's top management, defendants Rendulic, Hancock and Hanna, in the scheme to defraud HMC's creditors and clients. In this case, HMC and the intervenor-plaintiffs allege that Grant Thornton failed to recognize or report many of the acts of fraud, or acts which were designed to conceal that fraud, which occurred prior to or during Grant Thornton's

preparation of audit reports for HMC's 1989, 1990 and 1991 financial statements. Thus, for all relevant purposes, the factual situation is identical to that presented in *FDIC v. Ernst & Young.* The only real difference between the two cases is that in *Ernst & Young* the corporation was dominated by a single person who was involved in fraud. Here, the fraud was committed by dual owners, with the participation of HMC's three top officers.

HMC asserts, nonetheless, that the knowledge of fraud should not be imputed to it. Indeed, it must be kept in mind that the court in *Ernst & Young* was applying a Texas state rule for imputation of knowledge to a corporation, and that the court recognized the limited application of its decision:

> Moreover, we are not holding that an auditor is never liable to a corporation when a corporation's employee or agent acts fraudulently on the corporation's behalf. We limit our holding narrowly to the facts of this case under Texas law—i.e. the FDIC, as assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied.

*Id.,* at 172. HMC cites to *Askanase v. Fatjo,* 828 F.Supp. 465 (S.D.Tex.1993), a case involving a lawsuit by the trustee in bankruptcy of a corporation against the corporation's auditors alleging professional negligence. The auditor moved to dismiss on the basis of the statute of limitations. The trustee argued that the negligence was not discovered until a date falling within the statutory period. The auditor asserted that certain of the officers and directors of the corporation had become aware of the alleged deficiencies in the audit more than two years prior to the filing of the lawsuit, and sought to have this knowledge imputed to the corporation itself. The court stated that an agent's knowledge is not imputed to his principal if he acts entirely for his own purposes, but that knowledge would be imputed where he acts jointly in his own interests and that of the corporation. *Id.,* at 470–71. The court distinguished *Ernst & Young* on the basis that in *Ernst &*

*Young* there was no question that the sole shareholder and owner acted on the corporation's behalf as well as his own, since he so dominated the corporation's actions. In *Askanase,* however, a fact question existed concerning whether the individual officers and directors who were aware of the improper conduct were acting only in their own interests, or were acting at least in part to benefit the corporation. Hence, the knowledge of those officers and directors could not be imputed to the corporation as a matter of law, and the motion to dismiss was denied. Thus, the question of imputation of knowledge of particular facts, under the test set forth in the Fifth Circuit, depends upon the interests that an agent is pursuing in the transaction in question.

Most enlightening is a case cited by HMC, *Comeau v. Rupp,* 810 F.Supp. 1127 (D.Kan. 1992). In that case, which involved multiple parties and claims, the FDIC, as successor in interest of a failed savings and loan, sued Terry and C.F. Rupp, the former majority owners, president and directors of the Rooks County Savings and Loan Association ("RCSA" or "Association"), alleging that the Rupps had engaged in improper lending practices, which resulted in the insolvency of the Association. The FDIC also sued the Association's former accountants for professional negligence in certifying the Association's 1984 and 1985 financial statements in light of certain high-risk participation loans.[2] In addressing the accountant's motion for summary judgment, the court refused to impute the knowledge and conduct of the Rupps to the FDIC because it found that a question of fact existed concerning whether the Rupps had acted only for their personal gain, or for the purpose of benefiting the Association. *Id.* at 1141. The court also held that, even if the Rupps had acted at least in part for the benefit of the Association, it would not impute the Rupps' knowledge or conduct to the FDIC due to the fact that the FDIC is not in the same position as the bank itself or a normal successor in interest. *Compare FDIC v. O'Melveny & Meyers,* 969 F.2d 744 (4th Cir.1992) (equitable considerations of receivership by FDIC

**2.** Coincidentally, Grant Thornton was one of the accounting firms sued in the *Comeau* case.

and interests of third parties prevents application of equitable defense normally available against bank itself).

HMC relies upon *Comeau* to distinguish the instant situation from that presented in *Ernst & Young.* The *Comeau* court addressed *Ernst & Young,* however, in a footnote:

> Although the Accountants' position finds some support in *Ernst & Young,* that case presented facts significantly different from those before this court. Unlike the owner in *Ernst & Young,* the Rupps were not the sole shareholders of RCSA. The significance of this distinction was discussed in *Supreme Petroleum, Inc. v. Briggs,* 199 Kan, 669, 433 P.2d 373 (1967). In *Briggs,* the court recognized the exception to respondeat superior when the agent acts adversely to the principals' interest. *Id.* at 675, 433 P.2d at 378. However, the court relied upon an 'exception to the exception,' which nonetheless imputes the agent's wrongful acts to the principal when the agent is the sole actor or representative of the principal. *Id.* at 676, 433 P.2d at 378 (quoting 3 Am.Jur.2d Agency § 284, at 647). In such a case, the sole agent may be considered the alter ego of the principal. *Id.* Thus, because the agent in *Ernst & Young* was the association's sole owner, as well as its chairman; chief operating officer; and chief executive officer—among other positions—the agent so dominated the association that it was proper to consider his acts as the association's acts. 967 F.2d at 172 (expressly limiting holding to narrow facts of a 'dominating sole owner'). By contrast, the Rupps owned only 70% of RSCA, and their involvement in RSCA, although considerable, does not lend itself as easily to the characterization of 'dominating.'

*Id.* at 1141 n. 5. As Grant Thornton points out, the explanation in this footnote illustrates that the instant case is most similar to the *Ernst & Young* case. Here, Avradinis and Bhalla were the sole owners of HMC, and in every relevant sense "dominated" HMC's affairs. I see no relevant distinction between the *Ernst & Young* case and this case. In *Ernst & Young,* a single person who engaged in fraud dominated the corporation. Here, two persons who dominated the corporation were engaged in fraud. Thus, if there is an "exception to the exception" in Pennsylvania, as there is in Kansas and Texas, then the knowledge of Avradinis and Bhalla must be imputed to HMC.

The most authoritative statement of Pennsylvania law that I have encountered with respect to imputation is set forth in *Todd v. Skelly,* 384 Pa. 423, 120 A.2d 906 (1956). In that case, Skelly was on the board of directors of a bank for which he appraised a piece of property which plaintiff intended to purchase. It was alleged that Skelly, while appraising the property, became aware of plaintiff's plans to seek a change in zoning for the property and to erect a supermarket thereon, and on the strength of that knowledge, outbid plaintiff for the land. Plaintiff filed suit against the bank in trespass based upon Skelly's actions. The court, in determining that Skelly's actions could not be imputed to the bank, stated the rule of imputation as follows:

> Where an agent acts in his own interest which is antagonistic to that of his principal, or commits fraud for his own benefit in a matter which is beyond the scope of his actual or apparent authority or employment, the principal who has received no benefit therefrom will not be liable for the agent's tortious act.

*Id.,* 120 A.2d at 909. In a footnote to this statement, the court also stated the rule that "a principal will not be presumed to have had knowledge or information of the agent's fraudulent acts." *Id.* at n. 4. Thus, knowledge of the fraudulent acts of an agent will not be imputed to a corporation where the agent acted for his own benefit. Here, however, it has already been established that Avradinis and Bhalla were more than mere agents of HMC. Indeed, they were the sole owners and shareholders of HMC, and admittedly dominated the corporation's operations. Imputation of Avradinis' and Bhalla's knowledge of the fraud that they committed and were committing at the time that Grant Thornton audited HMC's financial statements ought to be imputed to HMC. *See, Cenco Inc. v. Seidman & Seidman,* 686 F.2d

449, 456 (7th Cir.1982) ("... [T]he uncontested facts show fraud permeating the top management of Cenco. In such a case the corporation should not be allowed to shift the entire responsibility for the fraud to its auditors.").[3] Thus, it is clear that HMC as an institution did not rely upon the audits conducted by Grant Thornton in any manner in shaping its conduct, since it was aware, through the knowledge of its owners and top officers, of fraudulent conduct affecting the accuracy of the financial statements. Grant Thornton is entitled to dismissal of the complaint filed against it by HMC, since HMC, as a matter of law, cannot establish proximate causation.[4]

### INTERVENOR–PLAINTIFFS

Intervenor-plaintiffs also have filed a complaint against Grant Thornton, and assert claims for professional malpractice, negligent misrepresentation and breach of contract. Grant Thornton provided services to HMC under contracts for audit reports with respect to HMC's year-end financial reports for 1989, 1990 and 1991. Grant Thornton asserts that the intervenor-plaintiffs, who had business relationships with HMC, are not in privity with Grant Thornton and, hence, cannot assert negligence claims or a claim for breach of contract.

■ First, with respect to the intervenor-plaintiffs' claims for professional malpractice, it is still the law in Pennsylvania that an action for professional negligence may not be maintained absent privity of contract between the parties. *Pell v. Weinstein,* 759 F.Supp. 1107, 1119 (M.D.Pa.1991); *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983). Hence, the intervenor-plaintiffs' claim for professional malpractice must be dismissed.

■ The intervenor-plaintiffs argue nonetheless that their claim for negligent misrepresentation does not require privity. A cause of action for negligent misrepresentation does not require privity. *Eisenberg v. Gagnon,* 766 F.2d 770, 779 (3d Cir.), *cert. denied sub nom., Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). In *Alten v. Atlantic Financial Federal,* 805 F.Supp. 5 (E.D.Pa.1992), the court denied a motion for summary judgment by an accountant which challenged a claim for negligent misrepresentation raised by investors who had relied upon an Accountant's Review Report issued with respect to an investment offered by a limited partnership. Clearly, the contract in that case was between the limited partnership and the accountant, and there was no privity between the plaintiffs and the accountant. Nonetheless, the court permitted a claim for negligent misrepresentation raised by investors

3. HMC asserts that a later case in the Seventh Circuit limited the applicability of *Cenco.* In *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983), the court was faced with RICO claims filed by the Director of Insurance for the State of Illinois against the auditors of a failed insurance company. The complaint contained allegations that the failed company's board of directors engaged in fraudulent conduct to conceal the company's insolvency from the state regulatory agency, which resulted in the company being permitted to operate long past insolvency and resulted in enormous losses to the company. The Director sued the company's auditors, alleging complicity in the fraudulent scheme. The auditors asserted that the knowledge of the fraud on the part of the company's board of directors must be imputed to the Director as successor in interest of the company. The court distinguished *Cenco* on the basis that *Cenco* was limited to cases where "the managers are not stealing from the company ... but instead are turning the company into an engine of theft against outsiders." *Cenco* at 454. Hence, the *Schacht* case involved a case where the company itself was looted and kept function-

ing long past insolvency to the detriment of innocent investors and shareholders. Here, however, HMC has admitted that it was used "as an engine of theft against outsiders" in that escrow accounts were depleted and loans were fraudulently obtained by HMC. Hence, the *Schacht* decision does not avail HMC.

4. HMC alleges breach of contract as well as negligence in its complaint. The breach alleged, however, is the failure to conduct audits with the applicable standard of care. This claim is more properly made as a tort claim, since the source of Grant Thornton's duty is not the contract or any promise therein, but instead is a matter of Pennsylvania law. *See, Official Comm. of Unsecured Creditors of Corell Steel ex rel. Corell Steel v. Fishbein and Co.,* 1992 WL 196768, at p. 6 (E.D.Pa. August 10, 1992); *Ernst & Young, supra,* 967 F.2d at 172 (affirming dismissal of contract claim against accountant since "a claim for failure to use professional care" by failing "to apply generally accepted auditing standards" is a claim sounding in tort); *In re Wedtech Corp.,* 81 B.R. 240, 242 (S.D.N.Y.1987) (same).

who had relied upon an Accountant's Review Report issued with respect to an investment offered by a limited partnership. Clearly, the contract in that case was between the limited partnership and the accountant, and there was no privity between the plaintiffs and the accountant. Nonetheless, the court permitted a claim for negligent misrepresentation by investors who relied upon the report. The court did not address the issue of privity with respect to the claim for negligent misrepresentation. In *Wilder v. Williams,* 1989 WL 67821 (W.D.Pa.1989) (per Bloch, J.), the court was faced with claims for both professional negligence and negligent misrepresentation asserted by the purchasers of a company for which defendant accountants had prepared financial statements prior to the sale. In ruling upon a motion to dismiss, the court found that the plaintiffs lacked privity for the professional negligence claim, but that plaintiffs had stated a claim for negligent misrepresentation. *Id.* at 4.

▪ Grant Thornton asserts that Pennsylvania's strict privity rule would be swallowed by an exception for negligent misrepresentation claims since an accountant always makes a representation, i.e., a report, which is often then reviewed by non-parties to the contract for various reasons. Hence, it is asserted, a party lacking privity with an accountant may simply allege negligent misrepresentation and thereby avoid the privity requirement.

The intervenor-plaintiffs respond that the tort of negligent misrepresentation is limited in scope, and would not emasculate the privity requirement. Pennsylvania has adopted the Restatement (Second) of Torts § 552 with respect to negligent misrepresentation. *Rempel v. Nationwide Life Insurance Co.,* 471 Pa. 404, 370 A.2d 366 (1977). The Restatement defines negligent misrepresentation as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise the care or competence in obtaining or communicating the information.

(2) ... [T]he liability state in Subsection (1) is limited to loss suffered.

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

In *Eisenberg v. Gagnon, supra,* the court was reviewing the entry of a judgment n.o.v. for an attorney on a claim of negligent misrepresentation with respect to tax shelters in which plaintiffs invested. Defendant attorney asserted that the judgment of the lower court could be affirmed since no attorney-client relationship existed between him and the investors who alleged they were deceived by the offering memoranda which contained the attorney's representations concerning the tax shelters. The court noted that the theory presented by the plaintiffs was not that the attorney breached a duty which he owes one in privity with him, but instead that he misrepresented the nature and value of goods in a transaction. *Id.* at 779. In *Eisenberg,* the plaintiffs alleged that the attorney misrepresented the nature of the tax shelters offered, and concealed the fact that he and his coconspirators would keep the lion's share of the profits. Here, however, Grant is not a party alleged to have misrepresented the nature and value of goods. Rather, the intervenor-plaintiffs' claim, although couched in terms of negligent misrepresentation, clearly involves the alleged breach by Grant Thornton of its obligation to perform audits of HMC financial statement according to Generally Accepted Auditing Standards. This is the very heart of a professional negligence claim.

Clearly, the Court of Appeals has concluded that Pennsylvania would recognize an exception to the privity requirement where the professional becomes directly involved in an effort to market a product. *Eisenberg, supra.* Here, the audit reports were used by

HMC as part of its ongoing business relationships with the intervenor-plaintiffs, and not in an effort to market either HMC or any investments. The most that can be said is that HMC used Grant Thornton's reports to benefit itself through maintaining business relationships with the intervenor-plaintiffs. Grant Thornton is not alleged to have profited or expected profit from the continuation of these relationships. Thus, this case can be distinguished from the situation in *Eisenberg* where the attorney stood to profit directly from the sale of the tax shelters.

Further, I am not convinced that Pennsylvania would extend an exception to the privity rule to situations, as in *Alten* and *Wilder*, where the professional does not have a direct involvement in a transaction, but issues an opinion which is then used by the party which does have a direct interest in the sale. In this latter situation, I find myself in agreement with Grant Thornton that the exception would tend to swallow the rule. Hence, I decline to accept the reasoning of *Alten* and *Wilder* that the mere pleading of negligent misrepresentation, even where the underlying negligence alleged is the failure to conform to professional standards owed to persons in privity, suffices to avoid the privity rule. I am convinced that Pennsylvania's strict adherence to the privity rule would result in a ruling that negligent misrepresentation may not be used to plead professional negligence claims by persons not in privity with the professional defendant. Grant Thornton's motion to dismiss must be granted with respect to the negligent misrepresentation claim.

### THIRD–PARTY BENEFICIARY STATUS

The intervenor-plaintiffs assert that they may sue Grant Thornton as third-party beneficiaries of the contracts between HMC and Grant Thornton to perform audit reviews for HMC's 1989, 1990 and 1991 financial statements. In general, for a third party to be entitled to sue under a contract, an obligation to the third party must affirmatively appear in the contract. *Pell v. Weinstein,*

759 F.Supp. 1107, 1119 (M.D.Pa.1991); *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147, 150 (1992). This rule applies strictly unless "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.,* 609 A.2d at 150–51. The intervenor-plaintiffs assert that they were the intended recipients of the benefit of the audit reports since HMC had an obligation to provide either a single report to them, or to allow each of them to send in a team of auditors to review HMC's financial statements.[5] Here, Grant Thornton points to the numerous allegations in the intervenor-plaintiffs' complaints against HMC regarding fraud and RICO violations, and asserts that intervenor-plaintiffs have conceded that HMC, the promisee, did not intend that the intervenor-plaintiffs be given the benefit of the promised performance, because HMC clearly did not intend that the intervenor-plaintiffs be given accurate financial statements, or an accurate audit report. I disagree.

Grant Thornton is asking the court to look beyond the transactions between it and HMC, and look to HMC's unexpressed, subjective intent. This way lies chaos in applying the third-party beneficiary rule. The court should, instead, look to the contract itself, and relevant, expressed intentions. HMC and Grant Thornton contracted for the provision of a competent audit report, regardless of any subjective intent on the part of HMC's former owners and officers to frustrate that goal. As part of that contract, HMC and Grant Thornton intended the intervenor-plaintiffs to receive the benefit of an audit conducted in accordance with professional standards. Indeed, without the obligation to provide the audit to the intervenor-plaintiffs, it is not clear that an audit would have been performed at all. Hence, recognition of the intervenor-plaintiff's right to rely on the audit reports is appropriate to effectu-

---

5. In this respect, the cover letter to the audit reports issued by Grant Thornton mentions the "Single Audit Program for Mortgage Bankers," which is the source of intervenor-plaintiffs' right to seek an audit of HMC, and pursuant to which HMC engaged Grant Thornton.

ate the intent of the parties. Further, the circumstances surrounding the execution of the contracts indicate that HMC intended that the intervenor-plaintiffs receive the benefit of the promised performance. Hence, I find that the intervenor-plaintiffs have stated a claim as a third-party beneficiary of the contracts between HMC and Grant Thornton for audit reports with respect to HMC's 1989, 1990 and 1991 financial statements, and conclude that Grant Thornton's motion to dismiss this claim ought to be denied.[6]

### FORESEEABILITY OF HARM

Grant Thornton asserts that, even if intervenor-plaintiffs may state a claim in contract as a third-party beneficiary, the claim must be dismissed because the damages alleged were not reasonably foreseeable at the time of contracting. In other words, Grant Thornton asserts that fraud by HMC's owners and officers would not be the reasonably foreseeable result of its alleged failure to comply with contract language concerning the standards used during its audit. In support of its assertion, Grant Thornton cites to *In re Gouiran Holdings, Inc.*, 158 B.R. 3 (E.D.N.Y.1993), where the court held that, absent a factual predicate pled in the complaint supporting a finding of foreseeability, an accountant will not normally be held liable for the misconduct of a corporation's insiders. Here, however, there are allegations in the complaint that several suspicious actions were either obvious to or should have been obvious to Grant Thornton, but were not reported in the audit reports, or were not

investigated. In such a situation, it may be that the intervenor-plaintiffs could establish that the fraudulent conduct they complain of may have been caused by Grant Thornton's failure to detect same. In any event, under Pennsylvania law, "the jury must determine whether the defendant, at the time of his negligent conduct, realized or should have realized the likelihood that his negligent conduct created a situation which afforded an opportunity to a third person to commit a crime [or tort]." *Douglas W. Randall, Inc. v. AFA Protective Systems*, 516 F.Supp. 1122, 1125 (E.D.Pa.1981), *aff'd* 688 F.2d 820 (3d Cir.1982). Hence, the motion to dismiss should be denied in this respect.

### INTERFERENCE WITH THE AUDIT

Grant Thornton also asserts that the contract claim raised by the intervenor-plaintiffs ought to be dismissed because of admitted instances of interference by HMC insiders with Grant Thornton's performance of the audits, and that any defense available against HMC is also available against third-party beneficiaries. The questions of audit interference is an affirmative defense which is analyzed under Pennsylvania law in terms of contributory negligence. *Jewelcor Jewelers and Distributors, Inc. v. Corr*, 373 Pa.Super. 536, 542 A.2d 72 (1988). The analysis involves numerous issues of fact, including whether any contributory negligence was substantial enough to relieve the defendant of liability. *Id.* This last concern in particular may not be determined as a matter of

---

6. It may seem anomalous to dismiss the intervenor-plaintiffs' claims for negligence on the basis of lack of privity, but to permit a claim sounding in contract, particularly where the standard of care alleged to have been breached in the dismissed tort claim and in the contract claim are the same. The court in *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744, 752 (1983), however, noted that "a plaintiff on a third party beneficiary theory in contract may in some cases have to show a deviation from the standard of care, as in negligence, to establish breach...." This does not change the analysis, however, since the "class of persons to whom a defendant may be liable [in a third-party beneficiary case] is restricted by principles of contract law, not negligence principles relating to foreseeability or scope of the risk." Thus, although it may appear so, there is no inherent inconsistency between a

finding that no privity exists for a professional malpractice claim, but that a contract action may be pursued by an intended third-party beneficiary. The apparent inconsistency arises from the fact that the Supreme Court of Pennsylvania has decided not to craft an exception to the privity requirement for professional negligence claims, but has instead determined to broaden the reach of the third-party beneficiary rule of standing in contract claims. Prior to this exception, standing to raise a professional negligence claim and to raise a third-party beneficiary claim were coextensive since "privity" was required for each, i.e, there needed to be an express contractual relationship. Now, there is an exception to the privity requirement, but only with respect to a claim sounding in contract. This court must apply state law as it finds it.

1410

law. The motion to dismiss must be denied in this respect.

### CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that Grant Thornton's motion to dismiss pursuant to Rule 12(b)(6) (Docket # 410) be granted with respect to HMC's complaint; granted with respect to the intervenor-plaintiffs' claims for professional malpractice and negligent misrepresentation; and denied with respect to the intervenor-plaintiffs' contract claim.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 4 of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report.

Dated: March 8, 1994.