In re: **QUALITY STORES, INC., et al., Debtors.**

**QSI Holdings, Inc. and Quality Stores, Inc., Plaintiffs,**

v.

**Cheryl A. Alford, et al., Defendants.**

**Bankruptcy No. GG 01–10662.**
**Adversary No. 03–88912.**

United States Bankruptcy Court, W.D. Michigan.

Oct. 26, 2006.

Robert S. Hertzberg, Pepper Hamilton, LLP, Detroit, MI, Benjamin M. Mather, Pepper Hamilton, LLP, Philadelphia, PA, for plaintiffs.

John K. Cunningham, Esq., White & Case, LLP, Miami, FL.

Robert H. Skilton III, Esq., and Michael B. O'Neal, Esq., Warner Norcross & Judd, LLP, Grand Rapids.

Jeffrey W. Bowling, Esq., Brandabur & Bowling Co., LPA, Hamilton, OH.

Boyd A. Henderson, Thomas P. Sarb, Miller Johnson, PLC, Grand Rapids, MI, J. Richard Colbeck, Richard Colbeck, PC, Coldwater, MI, John A. Watts, John A. Watts, PC, Allegan, MI, Paul R.F. Princi, Princi & King Co., LPA, Troy, OH, for defendants.

William R. Sininger, Esq., Williams Hughes Corwin and Sininger, LLP, Muskegon.

Douglas A. Springstead, Esq., Springstead Waltz Springstead & Fox, PC, Hart.

Gary T. Britton, Esq., Britton & Bossenbroek, PC, Muskegon.

### *OPINION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT UNDER 11 U.S.C. § 546(e)*

JAMES D. GREGG, Bankruptcy Judge.

## I. ISSUE.

This adversary proceeding arises from the 1999 leveraged buyout ("LBO") of the Debtor, Quality Stores, Inc. ("Quality"). The Plaintiffs, QSI Holdings, Inc. and Quality, acting through their chief litigation officer (collectively, the "Plaintiffs"), seek to avoid payments made to approximately 170 shareholders of Quality (the "Defendants") resulting from the LBO. Almost all of the Defendants have filed motions for summary judgment asserting that the transfers are exempt from avoidance based on the settlement payment defense in § 546(e) of the Bankruptcy Code.[1] Accordingly, the legal issue presented is whether the transfers from the disbursing agent to the Defendants are exempt from avoidance because they constitute "settlement payments" made by a "financial institution" under § 546(e).

## II. JURISDICTION.

The court has subject matter jurisdiction over this bankruptcy case and this adversary proceeding. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision.

28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This adversary proceeding is a core proceeding because the Plaintiffs seek to determine, avoid or recover fraudulent conveyances, 28 U.S.C. § 157(b)(2)(H).

## III. FACTS.

For purposes of this summary judgment motion, the facts are uncontested. Quality was a privately held corporation that operated a chain of retail stores specializing in agricultural and related products. In 1999, Quality and certain of Quality's principal shareholders entered into a merger agreement with Central Tractor Farm and Country, Inc. ("Central Tractor") and its parent company, CT Holdings, Inc. (collectively the "CT Parties"). Pursuant to the agreement, Quality was to merge with and into Central Tractor, with the surviving entity changing its name to Quality Stores, Inc. The agreement also called for Quality's shareholders to be paid, in cash or stock, for their respective equity interests. The assets of both Quality and Central Tractor were pledged as collateral for the loan that was obtained and partially utilized to pay the Quality shareholders.

The total purchase price for the LBO was approximately $208 million. Of this amount, Quality's shareholders were to receive $111.5 million in cash with $91.8 million of stock in CT Holdings, Inc. Central Tractor also agreed to assume and pay $42.1 million of Quality's existing indebtedness.

The Quality LBO involved both individual shareholders and company employees who were shareholders by virtue of their participation in Quality's Employee Stock Ownership Trust ("ESOT"). To effectuate

---

1. The Bankruptcy Code is contained in 11 U.S.C. §§ 101–1330. The 2005 amendments to the Bankruptcy Code, commonly referred to as "BAPCPA," are not applicable in this adversary proceeding. Therefore, unless stated to the contrary, all future statutory references are to the pre-BAPCPA Bankruptcy Code, e.g., " § ___."

the securities transaction contemplated by the LBO, the CT Parties made a $111.5 cash payment to their exchange agent, HSBC Bank USA ("HSBC Bank"). HSBC Bank collected the shares of Quality stock from individual shareholders. It then transferred the securities to the CT Parties and distributed the cash, or shares in CT Holdings, Inc., to the individual shareholders.

For the ESOT shareholders, many of whom were lesser paid and mid-level Quality employees, the settlement process involved one additional step. Most of the ESOT stock was held by the ESOT trustee, LaSalle Bank. LaSalle Bank tendered the shares of Quality stock to HSBC Bank and received the cash consideration.[2] The ESOT was eventually terminated and the funds were distributed by LaSalle Bank to the ESOT participants.

As a result of the merger, Quality incurred substantial integration costs. The merged company also implemented a costly expansion plan which aggressively contemplated the opening of twenty-five to fifty new stores each year. These business decisions, and others, contributed to continuing financial difficulties which eventually led a group of petitioning creditors to file an involuntary bankruptcy petition against Quality during October 2001. In response, before an order for relief was entered, Quality filed a voluntary petition under chapter 11 on November 1, 2001.

The Plaintiffs filed this fraudulent conveyance action on October 31, 2003. The complaint, as amended, alleges that the Defendants gave less than reasonably equivalent value when they tendered their Quality stock for cash as part of the LBO. The complaint further alleges that the LBO left Quality with unreasonably small capital and caused it to incur debts beyond its ability to pay. The Plaintiffs seek to avoid and recover the LBO transfers as constructively fraudulent conveyances pursuant to 11 U.S.C. § 544, § 550, and the Michigan Uniform Fraudulent Transfer Act, Mich. Comp. Laws Ann. §§ 566.31 *et seq.* The Defendants' motions for summary judgment assert that the LBO transfers were settlement payments made by a financial institution. Therefore, the Defendants seek dismissal of this adversary proceeding because they contend that the transfers are exempt from avoidance under § 546(e).

## IV. DISCUSSION.

The Plaintiffs commenced their fraudulent conveyance actions under § 544(b) of the Bankruptcy Code. Section 544(b) authorizes bankruptcy trustees to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law." 11 U.S.C. § 544(b) (incorporating the Michigan Uniform Fraudulent Transfer Act, Mich. Comp. Laws Ann. §§ 566.31 *et seq.*). The. Defendants assert that the LBO transfers are not subject to avoidance because they were settlement payments made by a financial institution under § 546(e). Section 546(e) states in pertinent part:

> Notwithstanding section[ ] 544 ... of this title, the trustee may not avoid a transfer that is a margin payment ... or *settlement payment,* as defined in section 101 or 741 of this title, made by or to a commodity broker, forward contract merchant, stockbroker, *financial institution,* or securities clearing agency, that is made before the commencement

---

**2.** LaSalle Bank determined that it was in the best interests of the ESOT participants to receive cash, rather than shares in CT Holdings, Inc. Presumably, this was a decision that LaSalle Bank could legally make.

of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e) (emphasis added).[3]

■■■ Whether the payments to the Defendants constitute "settlement payments" made by a "financial institution" under § 546(e) is a question of statutory construction. *Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 515 (3d Cir.1999), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999); *Jonas v. Resolution Trust Corp. (In re Comark)*, 971 F.2d 322, 324–25 (9th Cir.1992). To answer this question, the court must look first to the plain language of the statute. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *In re Standard Oil & Exploration of Del., Inc.*, 136 B.R. 141, 149 (Bankr. W.D.Mich.1992). "When the language is clear, no further inquiry is necessary unless applying the plain language leads to an absurd result." *In re Resorts Int'l, Inc.*, 181 F.3d at 515; *see Ron Pair Enters., Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030 (when a "statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'") (citation omitted).

■■■ Section 741 defines "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8); *see also* 11 U.S.C. § 101(51A) (using same definition "for purposes of the forward contract provisions" of the Bankruptcy Code). Although this definition has been criticized for being

"somewhat circular," it is also recognized as "extremely broad." *Kaiser Steel Corp. v. Charles Schwab & Co., Inc. ("Kaiser I")*, 913 F.2d 846, 848 (10th Cir.1990); *see In re Resorts Int'l, Inc.*, 181 F.3d at 515–16; *In re Comark*, 971 F.2d at 326.

The Tenth Circuit Court of Appeals is one of several courts that have applied this broad definition of "settlement payment" to transfers of consideration made in connection with an LBO. *Kaiser I*, 913 F.2d at 846; *Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp) ("Kaiser II")*, 952 F.2d 1230 (10th Cir.1991), *cert. denied*, 505 U.S. 1213, 112 S.Ct. 3015, 120 L.Ed.2d 887 (1992). In the early 1980s, Kaiser Steel, a publicly traded corporation, was bought by an outside acquisition group. The Kaiser LBO required Kaiser's shareholders to tender their shares of common stock to the company's disbursing agent. The disbursing agent then distributed cash and stock in the surviving entity to the shareholders. In *Kaiser I*, the court determined that payments made to shareholders through their securities broker, Charles Schwab & Co., were "settlement payments" exempt from avoidance under § 546(e). In *Kaiser II*, the court extended its holding to include transfers made from the disbursing agent directly to individual shareholders.

In both cases, the Tenth Circuit began its analysis with the statutory definition of settlement payment found in § 741(8). *Kaiser I*, 913 F.2d at 848; *Kaiser II*, 952 F.2d at 1237. The court concluded that this definition is intended to include any transfer which would be considered a settlement payment in the securities industry. *Kaiser I*, 913 F.2d at 848. The court further noted that the securities industry generally defines settlement as "the com-

---

**3.** By excepting transfers subject to avoidance under § 548(a)(1)(A), the defense provided by § 546(e) does not extend to transfers made within one year of the filing date with *actual intent* to hinder, delay or defraud a creditor.

pletion of a securities transaction."[4] *Kaiser I*, 913 F.2d at 849 (citing various securities industry texts). Thus, "interpreting 'settlement payment' to include the transfer of consideration in an LBO is consistent with the way 'settlement' is defined in the securities industry." *Kaiser I*, 913 F.2d at 849.

The Tenth Circuit also stated that its interpretation of "settlement payment" was consistent with the legislative intent behind § 546. *Kaiser I*, 913 F.2d at 848. The court explained that Congress first enacted § 546(e) in 1978 to "promote customer confidence in commodity markets . . . ." *Id.* at 849 (citing S.Rep. No. 95–989, at 8 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5794). Because the defense "only applied to margin payments to brokers and settlement payments from clearing organizations, it could be said only to 'protect[ ] the ordinary course of business in the market.' " *Id.* However, Congress broadened § 546(e)'s protections in 1982 and expressly extended them to the securities market. *Id.* By so doing, Congress again sought " 'to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries.' " *Id.* (quoting H.R.Rep. No. 97–420, at 1 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 583, 583). The court reasoned that "[t]he danger of a 'ripple effect' on the entire market is at least as inherent in the avoidance of an LBO as it is in the avoidance of a routine stock sale." *Id.* Accordingly, the court concluded that the transfers made in connection with the Kaiser LBO were exempt from avoidance under § 546(e).

■ This court reluctantly agrees with the decisions in *Kaiser I* and *Kaiser II* and joins those courts that have adopted a broad definition of "settlement payment." In settlement of the Quality LBO, the Defendants tendered their shares to the disbursing agent, HSBC Bank, and received payment. Within the meaning of the Bankruptcy Code, those payments received by the Defendants were "settlement payments" protected under § 546(e).

■ The Plaintiffs' plausible argument that Congress may have intended § 546(e) to apply more narrowly—i.e., only to routine, public transactions—"is not without merit." *Kaiser I*, 913 F.2d at 850. As the *Kaiser I* court noted: "[n]either LBOs nor other exceptional transactions were even mentioned in any of the discussions of the securities industry in the reports, debates, and hearings on [§ 546(e) ]." *Id.* (citation omitted). Further, applying § 546(e) to *private* securities transactions does not seem to effectuate Congress's intent of "promot[ing] stable financial markets." *Official Committee of Unsecured Creditors v. ASEA Brown Boveri, Inc. (In re Grand Eagle Cos.)*, 288 B.R. 484, 494 (Bankr. N.D.Ohio 2003). Indeed, § 546(e)'s broad protections seem to permit parties to a private securities action to circumvent potential avoidance simply by "funnel[ing] payments . . . through a financial institution." *Id.*

Congress could have easily addressed these concerns by narrowing or refining the language of § 546(e) or the definition in § 741(8). It has not done so. Because, in this court's opinion, application of the plain language of § 546(e) does not lead to

---

4. In *Kaiser II*, the court explained that a routine securities transaction provides two opportunities for settlement. The first, a "street-side settlement," occurs between the brokers and the clearing agency, which acts as an intermediary between the brokers. *Kai-ser II*, 952 F.2d at 1237–38. The second, "a 'customer-side settlement' . . . occurs between the broker and its customer." *Id.* at 1238. " 'Settlement payments' are those payments made in discharge of a party's settlement obligations." *Id.* (citation omitted).

an unjust or absurd result, this court will not impose any type of result-oriented interpretation of the language of the statute.[5] *See Kaiser I,* 913 F.2d at 850 (noting that to do so would be "an act of judicial legislation"); *but cf. Jewel Recovery, L.P. v. Gordon,* 196 B.R. 348, 352 (N.D.Tex. 1996) (conceding that "[t]he plain language of § 546(e) would appear to apply" to private securities transactions, but holding that such application "is not consistent with the statutory scheme" of the Bankruptcy Code).

█ The Plaintiffs also contend that the transfers at issue were not made "by . . . a financial institution" because Quality's disbursing agent never acquired a beneficial interest in the LBO consideration. This argument was adopted by a two judge majority in *Munford v. Valuation Research Corp. (In re Munford, Inc.),* 98 F.3d 604 (11th Cir.1996), *cert. denied,* 522

U.S. 1068, 118 S.Ct. 738, 139 L.Ed.2d 675 (1998).[6]

In *Munford,* the court assumed *arguendo* that payments to shareholders in a LBO were "settlement payments." *Id.* at 610. However, the court determined that the bank responsible for conveying payments to the shareholders "never acquired a beneficial interest in the funds." *Id.* Therefore, the bank "was not a 'transferee' in the LBO transaction." *Id.* Under the majority's analysis, the payments were essentially made by the debtor to the shareholders, with the bank acting as "an intermediary or conduit." *Id.* Because none of the entities listed in § 546(e) actually made or received a payment, the majority concluded that § 546(e) was inapplicable. *Id.*

Although the result may be characterized as "fair," this judge is not persuaded by the *Munford* analysis. By its plain language, § 546(e) applies to settlement

---

**5.** During oral argument, this judge questioned one of the lead attorneys for the ESOT Defendants. Is there any principled reason to distinguish the legal treatment of the payments made to the ESOT participants from the payments made to the officers and directors who controlled the transaction? May the payments to control group participants be avoided and recovered while the ESOT Defendants are insulated from avoidance and recovery? The ESOT Defendants' attorney candidly admitted that the current law allowed no such distinction. This judge agrees. Further, all attorneys were requested to address the issue of whether § 546(e) mandates a disparate treatment between settlement payments of publicly traded securities and private securities. After much thought, this judge is unable to perceive any such legally justifiable disparate treatment under § 546(e). Although the result in *Kaiser I, Kaiser II,* and this adversary proceeding may seem "unfair," it is not "unjust" given the language of the Bankruptcy Code. *Cf. General Elec. Capital Corp. v. Hoernr (In re Grand Valley Sport & Marine, Inc.),* 143 B.R. 840, 852–53 (Bankr.W.D.Mich.1992) (recognizing that a result may seem "unfair"

but is "just" under existing law; general unfairness must be subservient to the justness of the statute). Current law permits transferees of an otherwise possibly avoidable fraudulent conveyance to insulate themselves from liability by using a financial institution to effectuate the settlement payment in exchange of their stock in an LBO transaction. The language in § 546(e) therefore leads to possible abuse and immunity from avoidance and recovery under constructive fraud theories. (In the event of actual fraud, there is a possible distinction; actual fraud is difficult to prove and has not been alleged in this adversary proceeding.) As a voice from the rivers and forests of Michigan, this judge hopes that Congress will reassess § 546(e).

**6.** The dissenting judge disagreed with the majority's conclusion that "the dispositive issue [was] whether the financial institution acquired a beneficial interest in the settlement payments." *In re Munford,* 98 F.3d at 614. According to the dissent, this interpretation "disregarded the plain language of section 546(e) in order to create a new exception to its application." *Id.*

payments made "by ... a financial institution." *In re Resorts Int'l, Inc.*, 181 F.3d at 516. There is no requirement that the financial institution acquire "a beneficial interest in the funds they handle for the section to be applicable." *Id.* Again, this court will not impose policy limitations not expressly stated in the statute.

## V. CONCLUSION.

Based upon statutory construction, the payments the Plaintiffs seek to avoid in this fraudulent conveyance action are "settlement payments" made by a "financial institution" under § 546(e). As such, the payments are not subject to avoidance as constructively fraudulent transfers. Therefore, the Defendants' motions for summary judgment are granted. Because the § 546(e) defense applies equally to all Defendants in this adversary proceeding, the court shall also, on its own initiative, grant summary judgment in favor of the non-moving Defendants.[7]

A separate order shall enter accordingly.[8]

---

7. "[W]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the [trial] court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." *Acequia, Inc. v. Prudential Ins. Co.*, 226 F.3d 798, 807 (7th Cir.2000) (citation omitted).; *see also Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir.1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (trial courts "are widely recognized to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"). The Plaintiffs have had ample opportunity to argue against application of § 546(e) in this

adversary proceeding. Therefore, after careful consideration, the court concludes that summary judgment should be granted in favor of all Defendants.

8. Bankruptcy Rule 8002(a) generally permits the filing of a notice of appeal within ten (10) days of the entry of an order. However, Bankruptcy Rule 8002(c)(2) permits a bankruptcy court to extend the time to appeal by not more than twenty (20) days. Given that an appeal is extremely likely because reasonable judges disagree about the interpretation of § 546(e), this court will, on its own initiative, extend the time to appeal to thirty (30) days after entry of the order.