**In re LORANGER MANUFACTURING CORPORATION, Debtor.**

**Loranger Manufacturing Corporation and the Committee of Unsecured Creditors of Loranger Manufacturing Corporation, Plaintiffs,**

v.

**PNC Bank, National Association, George P. Loranger, John P. Loranger, Janet O. Loranger and Schaffner, Knight, Minnaugh & Company, P.C., Defendants.**

Bankruptcy No. 01–12307 (JKF).
Adversary No. 03–1227 (JKF).

United States Bankruptcy Court, W.D. Pennsylvania.

April 7, 2005.

Gregory D. Cribbs, Norman E. Gilkey, Babst, Calland, Clements & Zomnir, PC, Pittsburgh, PA, C. Christopher Hasson, C. Christopher Hasson PC, Carnegie, PA, for debtor.

Kathleen Robb, Pittsburgh, PA, U.S. Trustee.

John Martin Gallagher, Gallagher, Sandoval, PC, Los Angeles, CA, for Michel Asfahan.

Niccholas R. Pagliari, Robert P. Simons, Reed Smith LLP, Pittsburgh, PA, Kevin L. Colosimo, Pittsburgh, PA, Jill L. Locnikar, Cohen & Grigsby, Stanley A. Winikoff, Swartz Campbell LLC, Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is the motion of Defendant John P. Loranger ("J. Loranger") to dismiss the Complaint in this adversary proceeding pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012(b). The court has already dismissed all claims against defendants George P. Loranger ("G. Loranger"), PNC Bank, National Association ("PNC"), and Janet O. Loranger and Plaintiffs' settlement with defendant Schaffner, Knight, Minnaugh & Co., P.C. has been approved. Therefore, J. Loranger is the sole remaining Defendant. Of the nine claims brought in the Complaint, only the first five are asserted against J. Loranger.

In evaluating this motion to dismiss pursuant to Rule 12(b)(6), the court must assume the facts alleged in the Complaint to be true and draw all factual inferences in favor of the non-moving party, the

---

1. This memorandum opinion constitutes the court's findings of fact and conclusions of law. The court's jurisdiction is not at issue.

Plaintiffs. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). Defendant J. Loranger has the burden of proving that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991)(party moving for dismissal under Rule 12(b)(6) bears the burden of persuasion). To prevail, J. Loranger must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court finds that Defendant J. Loranger has not proven beyond doubt that the Plaintiffs can prove no set of facts in support of claims 1, 2 and 3 and, consequently, those claims will not be dismissed. However, for the reasons stated below, the fourth claim for intentional fraudulent transfer and fifth claim for constructive fraudulent transfer will be dismissed.

## Background

An involuntary chapter 11 petition was filed against Plaintiff/Debtor Loranger Manufacturing Corporation ("LMC") on November 19, 2001, and on November 21, 2001, LMC consented to the entry of an order for relief. Since November 21, 2001, LMC has been a Debtor–in–Possession.

The United States Trustee appointed a Statutory Committee of Unsecured Creditors on December 17, 2001. No Trustee or Examiner has been appointed in this case.

LMC manufactured highly engineered plastic and metal components and assemblies, primarily for the domestic auto industry, from its plant in Warren, Pennsylvania. At the time of the filing of the involuntary petition, LMC had approximately 300 employees.

Before the financial transactions that occurred on September 23, 1998, G. Loranger and J. Loranger were the sole officers, directors and shareholders of LMC. Plain-tiffs allege that the instant proceeding arose out of integrated financial transactions (the "Transactions") by which LMC borrowed $16.6 million from former defendant PNC Bank and then paid $9 million to J. Loranger to redeem his 50 percent ownership of LMC.

The Complaint asserts five claims against J. Loranger: (1) breach of fiduciary duty; (2) negligence; (3) unjust enrichment; (4) intentional fraudulent transfer; and (5) constructive fraudulent transfer.

J. Loranger pleads a statute of limitations defense to the first three tort claims and, in regard to the fourth and fifth claims, asserts a "settlement payment" exception under § 546(e) of the Bankruptcy Code to the avoidance powers of the trustee/debtor-in-possession under § 544(b). Further, J. Loranger argues that the third claim for unjust enrichment is preempted by § 546(e).

Plaintiffs reply, first, that, pursuant to the "discovery rule", the earliest date that the Complaint could have been filed was the Petition Date and, consequently, that the Complaint was filed while the Pennsylvania statute of limitations was running and the Plaintiffs' first three claims for breach of fiduciary duty, negligence and unjust enrichment were timely filed. During the course of this adversary proceeding, Plaintiffs' discovery rule argument metamorphosed into an argument that the statute of limitations was tolled by the adverse domination of LMC by G. Loranger. Second, the settlement payment exception, according to the Plaintiffs, does not apply where, as here, the payment was not made "by or to" one of the listed agencies in § 546(e). Finally, inasmuch as the settlement payment exception does not apply, according to Plaintiffs, it also cannot preempt the unjust enrichment claim.

### Claims 1, 2 and 3 for Fiduciary Breach, Negligence and Unjust Enrichment and the Discovery Rule Defense

J. Loranger argues that the Pennsylvania statute of limitations on tort claims is two years and that the transactions at issue in this proceeding closed on September 23, 1998. The Plaintiffs filed their Complaint over five years after the transactions closed and, thus, three years after the statute of limitations ran on September 23, 2000. Brief in Support of Motion to Dismiss of Defendant John P. Loranger Pursuant to Federal Rule of Civil Procedure 12(b)(6)(hereinafter, "Brief in Support of Motion"), Dkt. No. 33 at 4–5. Consequently, J. Loranger moves to dismiss the first three claims on the grounds that they are time-barred under the Pennsylvania statute of limitations for tort claims, 42 Pa.C.S.A. § 5524(7)(West 2004).

Plaintiffs agree that the statute of limitations for tort claims in Pennsylvania is two years:

> Mr. Loranger asserts (and the Plaintiffs agree) that under Pennsylvania law, any action or proceeding to recover damages for injury founded on negligent, intentional or otherwise tortious conduct must be commenced within two (2) years.

Plaintiffs Brief in Opposition to (i) the Motions of Defendants John P. Loranger, Janet O. Loranger and Schaffner, Knight, Minnaugh & Company, P.C. to Dismiss the Action for Failure to State a Claim, and (ii) the Motion of Defendant PNC Bank, National Association, for Judgment on the Pleadings (hereinafter, "Plaintiffs Brief in Opposition"), Dkt. No. 47 at 4.

However, Plaintiffs contend that, under the "discovery rule", the statute of limitations did not start to run until the corporation was no longer controlled by G. Loranger (i.e., the Petition Date):

> The "discovery rule" . . . arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause . . . . The salient point giving rise to the equitable exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury.

*Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983)(emphasis omitted), cited in Plaintiff's Brief in Opposition at 5.

Plaintiffs argue that only LMC can maintain an action under the first three claims of the Complaint and that LMC could not have brought an action for these three claims while G. Loranger controlled LMC. In the pleadings submitted by the Plaintiffs regarding J. Loranger's Motion to Dismiss, they did not elaborate on why LMC could not have brought these claims except to pose a question that is both rhetorical and ambiguous: "Why would he allow LMC to bring an action against him"? Plaintiffs' Brief in Opposition at 5. Besides posing their argument as a rhetorical question, both the "he" and the "him" are ambiguous. We assume that the "he" and "him"in this question refers to G. Loranger. In context, however, the "him" could apply either to G. Loranger or J. Loranger.

The court finds that the Plaintiffs' interpretation of the discovery rule is not consistent with case law.

The discovery rule "arises from the inability of the injured party, despite the exercise of reasonable diligence, to *know* of the injury or its cause." *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040, 1043 (1992)(emphasis added). *See also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir.1994)("[t]he discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury"). The plaintiff's knowledge of the injury, or imputed knowledge, is of the essence of the discov-

ery rule. The discovery rule does not apply to extend the statutory limitations period where, as here, LMC knew, or was imputed to know, of the injury.

■ For purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true the following facts alleged in the Complaint: (i) former defendant G. Loranger was "... at all times relevant to this action, the chairman and chief executive officer of LMC and owned one-half of the outstanding stock of LMC at the date of the Transactions" (Complaint ¶ 13); (ii) "G. Loranger ... offered to purchase J. Loranger's interest in LMC. The agreed redemption price was $9 million." (Complaint ¶ 21); (iii) as a result of the Transactions, after September 23, 1998, "G. Loranger became the sole shareholder and director of LMC and, as a result, was able to *exercise complete control over LMC.*" (Complaint ¶ 44)(emphasis added). For the purposes of this motion to dismiss, therefore, the court must conclude that G. Loranger was the sole owner, director and officer of LMC from September 23, 1998 through the petition date and exercised complete control over (i.e., "dominated") LMC throughout that period.

Plaintiffs allege, and the court must accept as true for purposes of this motion to dismiss, that G. Loranger "knew or should have know [sic] that LMC received no value, and certainly not reasonably equivalent value, for the amounts that were paid to J. Loranger or in fees billed to, or paid by, LMC in connection with the Transactions." (Complaint ¶ 42). G. Loranger's knowledge of this alleged injury to LMC is imputed to the corporate body of LMC. *PNC Bank v. Housing Mortgage Corp.,* 899 F.Supp. 1399, 1405 (W.D.Pa.1994)(knowledge of wrongdoing of agents who were the sole owners and shareholders and who "dominated" a corporation is imputed to the corporation). Since LMC knew of any injury or potential injury of which G. Loranger was aware, there was no injury for LMC to "discover" pursuant to the discovery rule.

The court concludes that the discovery rule exception to the statute of limitations defense is inapplicable to the instant proceeding and, therefore, the statute of limitations for the three tort claims against J. Loranger began to run on September 23, 1998. Unless some other event tolled the statute, it expired on September 23, 2000. The court now turns to the question whether G. Loranger's alleged adverse domination of LMC tolled the statute until he no longer controlled LMC.

### The Adverse Domination Argument

"Why would he [G. Loranger] allow LMC to bring an action against him?" The court would not ordinarily consider an ambiguous rhetorical question as an adequate legal argument in response to J. Loranger's statute of limitations defense. As discussed earlier, the question was posed in the context of Plaintiffs' discovery rule argument, which the court has discredited.

However, the question itself raises the issue of G. Loranger's control of LMC and whether he used or misused that power to prevent LMC from bringing actions against himself and/or J. Loranger for fiduciary breach, negligence and unjust enrichment. Thus, the proper inquiry for the court concerning J. Loranger's statute of limitations defense is not when an injury was discovered (thereby starting the statute of limitations clock), but whether the conduct of G. Loranger equitably tolled the statute.

■ The U.S. Court of Appeals for the Third Circuit cautions against confusing the discovery rule with equitable tolling:

Underlying this difference between the discovery rule and equitable tolling is

the more fundamental difference in purpose between the two rules. The purpose of the discovery rule is to determine the accrual date of a claim, for ultimate purposes of determining, as a legal matter, when the statute of limitations begins to run. Equitable tolling ... presumes claim accrual. Equitable tolling steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.

*Oshiver, supra,* 38 F.3d at 1390.

After defendants J. Loranger, G. Loranger and PNC Bank roundly refuted Plaintiffs' discovery rule argument, the Plaintiffs metamorphosed that argument into one of adverse domination:

The Plaintiffs have alleged that, as a result of LMC's redemption of J. Loranger's shares on September 25, 1998 and through October 21, 2002, G. Loranger controlled LMC. See Plaintiffs' Complaint ¶¶ 14, 29 and 32. Thus, while the statute of limitations with respect to LMC's claims for breach of fiduciary duty and negligence arguably began to run in September 1998, no "informed, empowered, but not culpable person," [citation omitted] existed at that time to bring the action. [Footnote omitted.] Thus, the doctrine of adverse domination tolled the statute.

Plaintiffs' Brief in Opposition to the Motion of Defendant George P. Loranger to Dismiss ("Brief in Opposition to G. Loranger Motion"), Dkt. No. 88 at 3.

Although the adverse domination theory was raised by Plaintiffs in opposition to the statute of limitations defense of defendant G. Loranger, the Plaintiffs explicitly tied G. Loranger's argument to J. Loranger's statute of limitations defense:

[T]he only argument that is actually relevant here is the one advanced by Defendant John P. Loranger ... with respect to the Plaintiffs' claims against him for breach of fiduciary duty and negligence: namely, that the Plaintiffs' claims are barred by the statute of limitations.[2] However, that argument fails for the same reason that J. Loranger's fails: the doctrine of adverse domination tolled LMC's claims against G. Loranger until he no longer controlled LMC.

Brief in Opposition to G. Loranger Motion, Dkt. No. 88 at 1–2.

The court finds that the adverse domination theory raised in Plaintiffs' Brief in Opposition to G. Loranger Motion is consistent with, and explanatory of,(i) the allegations in the Complaint that G. Loranger controlled LMC and (ii) the rhetorical question in Plaintiffs' Brief in Opposition, "Why would he [G. Loranger] allow LMC to bring an action against him?" The court notes that counsel for J. Loranger was served with all documents related to the adverse domination theory and was present in the courtroom on March 26, 2004, and June 16, 2004, when counsel had opportunities to argue aspects of the adverse domination theory. Consequently, the court concludes that the Plaintiffs raised the adverse domination theory as an objection to the statute of limitations defense asserted by J. Loranger and that J. Loranger had multiple opportunities to reply.

The court does not now decide the merits of the adverse domination theory. The court notes only that the theory was a proper objection to J. Loranger's statute of limitations defense. The adverse domination theory raises numerous questions of

---

**2.** [The above citation from Plaintiffs' Brief in Opposition to G. Loranger Motion includes the following internal footnote]: The Plaintiffs' First Cause of Action (Breach of Fiducia-ry Duty) and their second (Negligence) seek to recover against both G. Loranger and J. Loranger.

material fact which cannot be resolved as a matter of law on a motion to dismiss. *Oshiver, supra,* 38 F.3d at 1391 n. 1 (all that is required to defeat a motion to dismiss is that the plaintiff plead doctrine of equitable tolling); *In re MacGregor Sporting Goods, Inc. (Levitt v. Riddell Sports, Inc.),* 199 B.R. 502, 515 (Bankr. D.N.J.1995)("[t]he tolling principles of fraudulent concealment and adverse domination involve questions of fact which cannot be resolved as a matter of law on a motion to dismiss"); *In re Sverica Acquisition Corp. (Kaliner v. Load Rite Trailers, Inc.),* 179 B.R. 457, 470 (Bankr. E.D.Pa.1995) ("[s]ince the Trustee has pled facts to raise a claim of control of Debtor by the ... Defendants, ..., the Court cannot dismiss the possibility that the equitable tolling doctrine of adverse domination might be applicable in this case. Given that possibility, it is inappropriate to grant the motion to dismiss [a count] as barred by the statute of limitations.")

For all the above reasons, the court concludes that J. Loranger has not proven beyond doubt that the Plaintiffs can prove no set of facts in support of their first three claims for fiduciary breach, negligence and unjust enrichment. The court cannot grant J. Loranger's motion to dismiss those claims.

### Claim 3 for Unjust Enrichment

 J. Loranger has also objected to the third claim of unjust enrichment on the grounds that it is preempted by § 546(e) of the Bankruptcy Code. *According to J. Loranger,* the Plaintiffs are seeking the same remedy under their unjust enrichment claim as they seek under the fraudulent transfer claims: to avoid the transaction and recover the payment that was made in exchange for J. Loranger's shares. Claim 3, a state law claim, effectively acts as a § 544(b) fraudulent transfer claim and directly conflicts with the remedial exemption set forth in Bankrupt-

cy Code § 546(e). Under the doctrine of conflict preemption, state laws that interfere with or are contrary to federal law are preempted and without effect pursuant to the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, ¶ 2.

Plaintiffs reply that § 546(e) is not applicable in this case because the settlement payment was not made "by or to" one of the institutions required in § 546(e). Since § 546(e) is not applicable in this case, according to Plaintiffs, it cannot preempt the state law unjust enrichment claim.

 As will be explained below, the court finds that § 546(e) is applicable and bars Plaintiffs' fourth and fifth claims for fraudulent transfer. However, the court is not prepared at this time to accept J. Loranger's argument that § 546(e) preempts Plaintiffs' third claim for unjust enrichment. This is a complex question rooted in constitutional law. J. Loranger cites only one case in support of his argument, *In re Hechinger Investment Co. of Delaware,* 274 B.R. 71 (D.Del.2002), a district court decision that is neither precedential nor from this district. Plaintiffs have not yet addressed that portion of the *Hechinger* decision that supports J. Loranger's preemption argument. The court concludes that J. Loranger has not met his burden of persuasion that, beyond doubt, the Plaintiffs can prove no set of facts in support of their claim for unjust enrichment. J. Loranger's motion to dismiss claim 3 must be denied.

### Fourth Claim for Intentional Fraudulent Transfer

 Plaintiffs' fourth claim against J. Loranger is that the $9 million paid by LMC to him to redeem his shares was an intentional fraudulent transfer. *Intent* is a necessary element of this claim and must

be proven by the Plaintiffs. Plaintiffs properly pleaded intent in the Complaint:

60. LMC made the payment [to J. Loranger] with the actual intent to hinder, delay or defraud any entity to which LMC was or became indebted to on or after the date on which the payment was made.

Complaint, ¶ 60.

■ J. Loranger moves to dismiss the fourth and fifth claims on the grounds that the Plaintiffs base these claims on § 544(b) of the Bankruptcy Code. According to J. Loranger, the avoidance power under § 544(b) cannot be exercised when the transactions at issue are settlement payments as described in § 546(e):

Notwithstanding sections 544, 545, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a margin payment ... or settlement payment ... made by or to a commodity broker, forward contract merchant, financial institution, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

Plaintiffs' response to J. Loranger's settlement payment defense begins as follows:

Thus, three conditions must be met in order for the defense to apply: first, the prepetition transfer must have been a settlement payment or a margin payment; second, the prepetition transfer must have been made by or to one of the enumerated entities; and third, the debtor transferor must not have made the transfer with the actual intent to hinder, delay or defraud creditors so that it would be avoidable under Bankruptcy Code sections 548(a)(1)(A). The Plaintiffs agree that the prepetition payment to Mr. Loranger that they seek to avoid was a "settlement payment" and that LMC *did not make the payment with the intent to defraud.* Thus, the only issue is whether the settlement payment Mr. Loranger received was "made by or to a commodity broker, forward contract merchant, financial institution, or securities clearing agency," and Mr. Loranger cannot satisfy this condition.

Plaintiffs' Brief in Opposition at 6 (emphasis added).

In their attempt to oppose J. Loranger's settlement payment defense, Plaintiffs contradict an essential element of their claim for intentional fraudulent transfer by admitting that the transfer was not made with intent to defraud. This admission is fatal and irremediable to their claim. Plaintiffs' fourth claim for intentional fraudulent transfer must be dismissed with prejudice.

As discussed below, the court finds that the fourth claim must also be dismissed because the payment to J. Loranger was a settlement payment as described in § 546(e) and, consequently, the debtor-in-possession may not avoid this transfer under § 544(b)..

### Fifth Claim for Constructive Fraudulent Transfer

■ Plaintiffs' fifth claim is that the $9 million payment from LMC to J. Loranger was a constructive fraudulent transfer, in that LMC received less than reasonably equivalent value for the money paid to J. Loranger, that there was at least one creditor at the time of the Transactions holding an unsecured claim against LMC within the meaning of § 502(d) of the Bankruptcy Code and that (i) LMC was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining in it constituted unreasonably small capital; and/or (ii) LMC intended to incur, or believe it would incur, debts that would be beyond its ability to pay as they matured.

As discussed above, J. Loranger pleaded the settlement payment defense under § 546(e) to this claim. J. Loranger contends that the three conditions for a settlement payment defense under § 546(e) were present in the Transactions: that the $9 million payment to J. Loranger was a settlement payment, that it was made by a financial institution (PNC Bank) and that it was not made with the intent to defraud creditors. The court notes that the Plaintiffs have conceded that it was a settlement payment and (to the detriment of their fourth claim) that it was not made with intent to defraud the creditors of LMC. The controversy has centered on the second condition, whether the payment was made "by or to" a financial institution.

There can be no doubt that PNC Bank is a financial institution. "Defendant PNC Bank is a national banking association with its principal place of business in Pittsburgh, Pennsylvania." Complaint ¶ 12 Further, the parties do not dispute that the $9 million was wire transferred. Complaint ¶ 29.

J. Loranger argues that the $9 million settlement payment was made by PNC Bank via wire transfer to J. Loranger and thus it was a settlement payment "made by or to ... a financial institution" in fulfillment of the second and only disputed condition for a § 546(e) defense. J. Loranger bases his argument on the precedents in *In re Hechinger Investment Co. of Delaware,* 274 B.R. 71 (D.Del.2002), and *In re Resorts Int'l, Inc. (Lowenschuss v. Resorts International, Inc.),* 181 F.3d 505 (3d Cir.), *cert. denied sub nom. Sun Int'l North America, Inc. v. Lowenschuss,* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999). Based on the precedents in *Resorts* and *Hechinger,* J. Loranger argues that payments made by a financial institution to shareholders as part of a leveraged buy-out are settlement payments within

the meaning of § 546(e) and thus not avoidable under the Bankruptcy Code.

The Plaintiffs rely on the allegation in the Complaint that LMC, not PNC Bank, paid the $9 million to J. Loranger:

> 29. On September 25, 1998—two days after the parties closed the loan— PNC Bank used $2,642,857.08 from the Revolving Credit Facility to pay off two loans that LMC had with it. At LMC' [sic] request, PNC Bank then transferred $8.1 million in term loan proceeds and the $3,992,857.08 still available under the Revolving Credit Facility to a LMC account at PNC Bank. Thereafter, LMC wired [sic] transferred $9 million from its account to J. Loranger.

Complaint ¶ 29. In addition to the alleged fact in the Complaint that LMC paid J. Loranger, the Plaintiffs also argue that *Resorts* can be distinguished from the case at bar:

> Lowenschuss tendered his shares ... to Merrill Lynch, his broker, who in turn tendered them to Chase Manhattan Bank, Resort's Transfer Agent for the merger. As it regularly did, Chase forwarded a list of the tendering shareholders to Resorts and asked Resorts to wire funds to the payment account. Approximately two weeks after the tender, Resort's treasurer authorized the transfer of funds to Chase. Chase then delivered a check to Merrill Lynch for $3,805,200.00, which was paid over to Lowenschuss.

*Resorts, supra,* 181 F.3d at 508–09. Here the Plaintiffs argue that the *Resorts* case involved multiple payments by financial institutions in an intermediary capacity (payment of Resorts to Chase, payment of Chase to Merrill Lynch, and payment of Merrill Lynch to Lowenschuss). In the instant case, LMC paid J. Loranger without any intervening financial institution. In a footnote, the Plaintiffs appear to ac-

knowledge that PNC was involved, but only in its capacity as a bank that facilitates a wire transfer and Plaintiffs argue that there is no reported case that has extended the protection of section 546(e) to a bank that merely facilitates a wire transfer.

J. Loranger responds that the allegation in the Complaint that LMC paid J. Loranger directly is a "factual and legal impossibility"[3] in that only a bank can make a wire transfer and, thus, a wire transfer is always made "by or to a ... financial institution." J. Loranger demands that the court take judicial notice of Title 12 of the Code of Federal Regulations, where a wire transfer is defined as an

> ... unconditional order to a bank to pay a fixed or determinable amount of money to a beneficiary upon receipt or on a day stated in the order, that is transmitted by electronic or other means through Fedwire, the Clearing House Interbank Payments System, other similar network, between banks, or on the books of a bank.

12 C.F.R. § 229.2(*ll*), cited in Reply to Plaintiffs' Brief, Dkt. No. 53 at 5. Because a wire transfer requires a bank to perform the transfer, LMC could not have paid J. Loranger directly. J. Loranger also opposes the footnote comment by the Plaintiffs that there is no reported case that has extended the protection of § 546(e) to a bank that merely facilitates a wire transfer. J. Loranger cites *Resorts,* where funds were wire transferred and the Court of Appeals held that the funds thus transferred were settlement payments under § 546(e).

The court takes judicial notice of 12 C.F.R. § 229.2(*ll*) where the above definition of a wire transfer occurs. The court also takes judicial notice of 12 C.F.R.

§ 229.2(e)(1) where, for the purposes of a wire transfer, a "bank" is defined:

> Bank means—
>
> (1) An insured bank as defined in section 3 of the Federal Deposit Insurance Act (12.U.S.C.1813) ....

The court finds that PNC Bank, N.A., unquestionably meets this definition of a bank for the purposes of a wire transfer. Further, the court has examined all definitions of a bank within 12 C.F.R. § 229.2(e) and finds that neither J. Loranger, G. Loranger nor LMC meets the definition of a bank for wire transfer purposes.

The court has examined Plaintiffs' arguments that PNC's involvement was incidental or mere facilitation. None of these arguments can overcome the clear counsel of the Court of Appeals for the Third Circuit in *Resorts* that the plain meaning of § 546(e) governs its interpretation:

> Despite the fact that payments to shareholders in an LBO are not the most common securities transaction, we see no absurd result from the application of the statute's plain language and will not disregard it.

*Resorts* at 516.

Therefore, the court finds that, based on the allegations in the Complaint and the federal regulations that govern wire transfers, the debtor, LMC, must have made an unconditional order to PNC Bank to pay $9 million by wire transfer for the benefit of J. Loranger. The court must also agree with J. Loranger that Plaintiffs' allegation that "LMC paid Mr. Loranger directly" (Plaintiffs' Brief in Opposition at 7) is a factual and legal impossibility. A wire transfer was involved, and only banks (as defined in 12 C.F.R. § 229.2(e)) can perform wire transfers. Thus, the $9 million

---

**3.** Reply to Plaintiffs' Brief in Opposition to the Motion of Defendant John P. Loranger to Dismiss the Action for Failure to State a Claim (hereinafter, "Reply to Plaintiffs' Brief"), Dkt. No. 53 at 5.

payment to J. Loranger was a securities settlement payment in a leveraged buyout, and it was made by PNC Bank, a financial institution as defined in § 546(e). Defendant J. Loranger has successfully pleaded a settlement payment defense under § 546(e) to Plaintiffs' fourth and fifth claims for fraudulent transfer.

### Conclusion

The court finds that Defendant J. Loranger has not established that the Plaintiffs can prove no set of facts in support of claims 1, 2 and 3 and, consequently, those claims will not be dismissed. However, because Plaintiffs concede that "LMC did not make the payment [to J. Loranger] with the intent to defraud", thus denying an essential element of their fourth claim for intentional fraudulent transfer under § 544(b), Plaintiffs' fourth claim must be dismissed with prejudice. Defendant J. Loranger has also established that Claims 4 and 5 are barred by the settlement payment exception of § 546(e), and these claims will be dismissed.